# Third District Court of Appeal

**State of Florida**

Opinion filed May 4, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-2379
Lower Tribunal No. 11-8314
_____

**Jorge Piedra, Sr., etc.,**
Appellant,

vs.

**City of North Bay Village, etc., et al.,**
Appellees.


An appeal from the Circuit Court for Miami-Dade County, Ronald C. Dresnick, Judge.

John Herrera, for appellant.

Johnson, Anselmo, Murdoch, Burke, Piper & Hochman and Michael R. Piper and Christopher J. Stearns (Ft. Lauderdale), for appellee City of North Bay Village; Richard A. Sherman, Sr., and James W. Sherman (Ft. Lauderdale); Law Offices of Esther B. Nickas and Lynn M. Bagley, for appellee Groundkeepers, Inc.; Gaebe, Mullen, Antonelli & DiMatteo and Elain D. Walter and Brian W. Kelley, for appellee Oscar Alfaro.


Before SUAREZ, C.J., and EMAS and FERNANDEZ, JJ.

SUAREZ, C.J.

Jorge Piedra, Sr., on behalf of his son, Jorge Piedra, Jr, a minor, appeals from final summary judgments entered in favor of the City of North Bay Village, Groundskeepers, Inc., and Oscar Alfaro. Appellant asserts that the trial court erred in granting summary judgment as to all three Defendants where there exist issues of material fact as to each Defendant/Appellee precluding summary judgment. We agree and reverse.[1]

The Appellant's 12-year old son ["Piedra Jr."] and his friend were riding a motorized skateboard around the streets of the City of North Bay Village. Both boys were riding the motorized skateboard in a sitting or crouched position as they approached the intersection in question, which was controlled by stop signs. They claim to have stopped before entering the intersection. A truck driven by Dario Nanni arrived at the intersection along the adjacent street. He also claims to have stopped before entering the intersection. Between the two streets lies the Appellee City's foliage-planted intersection "bulb-outs"[2] and property owner / Appellee Alfaro's hedges. The boys testified that they briefly glimpsed Nanni's car through a gap in the foliage between Alfaro's hedge and the City's planted bulb out. Nanni testified that he did not see the boys approach the intersection because the foliage

---

[1] We address solely the issue of whether or not the trial court was correct in granting summary judgment. We make no conclusions regarding the merits of the case.

[2] A "bulb-out" is a curb extension or planted area that extends parallel to the sidewalk into the street following the curve of an intersection corner.

was too high for him to see them sitting on the skateboard. Nanni's car collided with the boys on the skateboard when both parties entered the intersection at the same time. Piedra Jr. suffered a broken leg. The City's police detective investigated and determined that Piedra Jr. was at fault as he was an unauthorized operator of a "motor vehicle," and because he was sitting on the skateboard and could not be seen by driver Nanni.

Piedra's father, Appellant, sued: 1) Nanni, for negligence[3]; 2) the City, alleging it negligently allowed a known hazardous condition to exist at the intersection by allowing the planted foliage in the bulb-out areas of the intersection to reach a height that impeded Nanni's line of sight; 3) Groundskeepers, the City's contracted landscaping maintenance company, for negligently maintaining the bulb-out foliage; 4) property owner Alfaro for negligence, alleging Alfaro's hedges were negligently maintained around his property resulting in blocked views of either approach to the intersection.

The City moved for summary judgment, asserting the affirmative defense of sovereign immunity, arguing its decision to plant the bulb-outs was a planning, rather than operational, function and thus precluded liability. The City also asserted Piedra Jr.'s comparative negligence. Groundskeepers joined in the City's motion, arguing that it did not have a duty to maintain the bulb-outs under its contract entered into with the City prior to the bulb-out plantings; hence it, too,

---

[3] Nanni was later voluntarily dismissed by Piedra and is not part of this appeal.

was not liable.    Property owner Alfaro moved for summary judgment, asserting that his hedge was fully within his property boundaries and there was no record evidence that the hedge height violated any City ordinance on the day of the accident.    The trial court granted summary judgment in favor of all three defendants.

Summary judgment should be exercised with special caution in negligence actions, and granted only when there is a complete absence of genuine issues of material fact.    Holl v. Talcott, 191 So. 2d 40, 46 (Fla. 1966).  Nothing should remain to be resolved but questions of law. Moore v. Morris, 475 So. 2d 666 (Fla. 1985); Holl, 191 So. 2d at 46.  If the record on appeal reveals the merest possibility of genuine issues of material fact, or even the slightest doubt in this respect, the summary judgment must be reversed.    Estate of Marimon ex rel. Falcon v. Florida Power & Light Co., 787 So. 2d 887, 890 (Fla. 3d DCA 2001) (stating the appellate court must consider the evidence in the light most favorable to the nonmoving party and must draw all competing inferences in favor of the nonmoving party).

**City of North Bay Village**: The City argues that it is immune from suit because the planting of the bulb-outs was a planning decision rather than an operational decision.  See Slemp v. City of N. Miami, 545 So. 2d 256, 257 (Fla. 1989) ("The abiding test for determining whether a government entity has sovereign immunity for its tortious acts is the operational/planning formula set forth in Commercial Carrier Corp. v. Indian River County, 371 So. 2d 1010 (Fla.

4

1979)."). "Planning level functions are generally interpreted to be those requiring basic policy decisions, while operational level functions are those that implement policy." Commercial Carrier, 371 So. 2d at 1021. As discussed in Wallace v. Dean, 3 So. 3d 1035, 1044 (Fla. 2009), when addressing the issue of governmental liability under Florida law, we must first undertake a duty analysis. Should there be a duty, then the inquiry is whether the governmental entity remains sovereignly immune from suit notwithstanding the legislative waiver present in section 768.28, Florida Statutes. Thus, "[i]f no duty of care is owed with respect to alleged negligent conduct, then there is no governmental liability, and the question of whether the sovereign should be immune from suit need not be reached. However, if a duty of care is owed, it must then be determined whether sovereign immunity bars an action for an alleged breach of that duty." Pollock v. Fla. Dep't of Highway Patrol, 882 So. 2d 928, 932-33 (Fla. 2004).

To answer the initial question of duty, the issue is whether the city's actions were planning or operational. A government's planning level decisions are immune from suit, while a government's operational decisions are not immune from suit. Commercial Carrier, 371 So. 2d at 1010 (Fla. 1979). The record supports the conclusion that the City's actions in designing and planting the bulb out areas was a planning level function and therefore immune from suit.

Maintenance of the area, however, is an operational, not a planning level function. The City would not be immune from suit for its alleged negligent actions

5

or omissions in maintaining the bulb-out areas.  See Commercial Carrier, 371 So. 2d 1010 (Fla. 1979); Dep't. Transp. v. Neilson, 419 So. 2d 1071 (Fla. 1982). See also Palm Beach County Bd. of Cty. Commr's v. Salas, 511 So. 2d 544 (Fla. 1987); Hughes v. City of Fort Lauderdale, 519 So. 2d 43, 44 (Fla. 4th DCA 1988). To be sure,

> [S]overeign immunity does not bar an action against a governmental entity for rendering an intersection dangerous by reason of obstructions to visibility if the danger is hidden or presents a trap and the governmental entity has knowledge of the danger but fails to warn motorists. Where a governmental entity knowingly maintains an intersection right-of-way which dangerously obstructs the vision of motorists using the street in a manner not readily apparent to motorists, it is under a duty to warn of the danger or make safe the dangerous condition.

Bailey Drainage Dist. v. Stark, 526 So. 2d 678, 681 (Fla. 1988).  See also Dykes by Dykes v. City of Apalachicola, 645 So. 2d 50 (Fla. 1st DCA 1994) (finding material fact issue existed as to whether conduct of 12-year-old mowing lawn in right-of-way in front of home, in stepping into roadway, was foreseeable by city, which had duty to maintain foliage in right-of-way, precluding summary judgment).

Therefore, whether the City negligently maintained or failed to maintain the vegetation planted in the bulb-outs so as to obstruct the vision of motorists at the intersection, thereby breaching its duty to the plaintiff, is a disputed issue of fact precluding summary judgment for the City.

**Groundskeepers**: Groundskeepers argues that it did not have a duty to the plaintiff to maintain the vegetation in the bulb-outs. Groundskeepers claims that it only maintained the bulb-outs when specifically requested by the City and was not contractually obligated to maintain these areas, as the bulb-outs were constructed and planted after Groundskeepers entered into its contract with the City for maintenance. Groundskeepers joined with the City's motion for summary judgment, did not make any legal argument at the summary judgment hearing, and without making any findings of law or fact, the trial court granted summary judgment as to Groundskeepers. The record, on the other hand, indicates that Groundskeepers may have been obligated by contract to maintain the public rights of way. Further, the record suggests that the decorative grasses planted in the bulb-outs may grow to a height that could obstruct a motorist's line of sight to adjacent streets approaching the intersection. Where issues of fact are in dispute regarding Groundskeeper's duty to maintain the bulb-outs in question, summary judgment was inappropriate.

**Property Owner Alfaro**: Questions of fact remain as to whether property owner Alfaro's hedges were within or outside the property boundaries, the height of the hedges at the time of the accident and whether the height of the hedges obstructed vision of the intersection. We follow the reasoning set forth by the Florida Supreme Court in Williams v. Davis, 974 So. 2d 1052, 1062 (Fla. 2007) in holding that ordinarily a private residential landowner should be held accountable

7

under the zone of risk analysis principles of <u>McCain</u>[4] only when it can be determined that the landowner has permitted conditions on the land to extend into the public right-of-way so as to create a foreseeable hazard to traffic on the adjacent streets. <u>See, e.g.</u> <u>Dykes v. City of Apalachicola</u>, 645 So. 2d 50, 52 (Fla. 1st DCA 1994) (applying <u>McCain</u> to determine liability of city for trees and bushes along right-of-way obstructing view of motorists); <u>Grier v. Bankers Land Co.</u>, 539 So. 2d 552, 553 (Fla. 4th DCA 1989) (reversing summary judgment in favor of a defendant landowner where foliage protruding from defendant's property into the right-of-way obstructed approaching motorist's view of the intersection); <u>Fernandez v. Flores</u>, 467 So. 2d 364, 365 (Fla. 2d DCA 1985) (finding that a jury question was presented where car of property owner parked on shoulder of road obstructed approaching motorist's view of the intersection); <u>Armas v. Metro. Dade County</u>, 429 So. 2d 59, 60-61 (Fla. 3d DCA 1983) (reversing summary judgment in favor of a defendant landowner where foliage protruding from defendant's property into the public right-of-way obstructed approaching motorist's view of a stop sign); <u>Morales v. Costa</u>, 427 So. 2d 297, 298 (Fla. 3d DCA 1983) (same). <u>See also</u> <u>Williams v. Davis</u>, 974 So. 2d 1052, 1066 fn.3 (Fla. 2007). Certainly the issue remains as to whether, at the time of the accident, the hedges were in violation of the City ordinance regarding vegetation height limitations and distances from the right-of-way, whether the vegetation extended beyond the

---

[4] <u>McCain v. Florida Power Corp.</u>, 593 So. 2d 500 (Fla. 1992).

8

property boundaries and whether such growth created a visual hazard to those approaching the intersection such that it was a legal cause of the accident in question. See, e.g. Stevens v. Liberty Mut. Ins. Co., 415 So. 2d 51, 52 (Fla. 3d DCA 1982) (asserting that *in the absence of a violation of a statute*, a landowner does not have a duty to "maintain his property in a condition so that a motorist approaching a public highway intersection can see other approaching motorists")[emphasis supplied]; Pedigo v. Smith, 395 So. 2d 615, 615-17 (Fla. 5th DCA 1981) (finding no liability of landowner for visual obstruction of tree located on the property); Evans v. S. Holding Corp., 391 So. 2d at 232-33 (Fla. 3d DCA 1980) (declining to impose liability where foliage entirely on property obstructed view of the intersection), abrogated by Whitt v. Silverman, 788 So. 2d 210 (Fla. 2001). Summary judgment was therefore inappropriate.

After a careful review of the entire record on appeal and viewing the facts in the light most favorable to the non-moving plaintiff, we find genuine issues of material fact exist to preclude the entry of summary judgment in favor of the defendants. The record reveals that a number of material facts are disputed regarding the defendants' duty to the plaintiff, including 1) whether the foliage growing in the bulb-outs was negligently maintained by the City such that, at the time of the accident, the vegetation was so high or overgrown as to obscure visual observation of traffic approaching the intersection; 2) whether the vegetation in the bulb-outs at the time of the accident presented a hidden danger to motorists of

9

which the City knew or should have known and failed to provide warning; 3) whether the intersection's condition at the time of the accident was a cause of the accident; 4) whether the property owner's hedges at the time of the accident were subject to and violated City ordinance regarding vegetation heights. Finally, there may be comparative fault issues to be resolved where the facts indicate the Plaintiff was riding a motorized skateboard, seated well below a motorist's line-of-sight, in the middle of a public street.[5] Issues of negligence and proximate cause are ordinarily questions for the jury if reasonable persons can arrive at different conclusions. Cassel v. Price, 396 So. 2d 258 (Fla. 1st DCA), rev. denied, 407 So.2d 1102 (Fla.1981); Seaboard Coast Line Railroad Co. v. Griffis, 381 So. 2d 1063 (Fla. 1st DCA 1979).

We conclude that the Appellant has met its burden of proving that genuine issues of material fact remain concerning the duties and relative liabilities of the City, Groundskeepers, and the homeowner, Alfaro. The defendants have not met their burden of proof to conclusively show the absence of a genuine issue of material fact, thus precluding summary judgment. See Wills v. Sears, Roebuck &

---

[5] See McCabe v. Walt Disney World Co., 350 So. 2d 814, 815-16 (Fla. 4th DCA 1977) ("[T]he questions of whether the appellant himself was contributorily negligent or whether he had assumed the risk of injury through his conduct must be decided by a jury. Such issues, now categorized under the rubric of comparative negligence, are seldom appropriate for determination through the vehicle of summary judgment. In short, the questions of the negligence of the appellee and the comparative negligence of the appellant are material issues of fact which exist so as to preclude entry of summary judgment."). (citations omitted).

Co., 351 So. 2d 29 (Fla. 1977); Sun Chevrolet, Inc. v. Crespo, 613 So. 2d 105 (Fla. 3d DCA 1993); Florida East Coast Ry. v. Metro. Dade County, 438 So. 2d 978 (Fla. 3d DCA 1983).  Accordingly, we reverse the final summary judgments entered in favor of the City, Groundskeepers, and Alfaro, and remand the cause for further proceedings consistent with this opinion.

Reversed and remanded.